**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

Case No. **CV 26-1198-JFW(Ex)** Date: May 20, 2026

Title: Song Dow Lee, et al. -*v*- HSBC Bank USA, National Association, et al.

---

**PRESENT:**
**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| **Shannon Reilly**<br>**Courtroom Deputy** | **None Present**<br>**Court Reporter** |

| **ATTORNEYS PRESENT FOR PLAINTIFFS:** | **ATTORNEYS PRESENT FOR DEFENDANTS:** |
|---|---|
| None | None |

**PROCEEDINGS (IN CHAMBERS):** **ORDER GRANTING DEFENDANT HSBC BANK USA, NATIONAL ASSOCIATION'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT [filed 3/24/2026; Docket No. 31]**

On March 24, 2026, Defendant HSBC Bank USA, National Association ("Defendant" or "HSBC") filed a Motion to Dismiss Plaintiffs' First Amended Complaint. On April 6, 2026, Plaintiffs Song Dow Lee, by and through Timothy Song Lee and Terry Song Lee, in their capacities as Co-Conservators of the conservatorship estate of Song Dow Lee and in their capacities as attorneys-in-fact for Song Dow Lee; and Timothy Song Lee and Terry Song Lee, in their capacities as Successor Co-Trustees of the Song Dow Lee Living Trust, u/a/d December 5, 2022, as Amended (collectively, "Plaintiffs") filed their Opposition. On April 13, 2026, HSBC filed a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument. The matter was, therefore, removed from the Court's April 27, 2026 hearing calendar and the parties were given advance notice. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs allege that 82-year-old Song Dow Lee ("Dr. Lee") was the victim of two so-called "pig butchering romance scams" beginning in or about April 2021, when Dr. Lee was a customer of Chase Bank. According to Plaintiffs, during the course of three years, Dr. Lee wired millions of dollars to fictional parties for "purported investments" to be made on his behalf, even after being told by police and authorities that he was being scammed.

In the first pig butchering romance scam, between April 17, 2021 and May 30, 2024, Dr. Lee

was defrauded by a person using the name “Jessica Li”, who contacted him unsolicited on Facebook and convinced him to wire “no less than $3.9 million” to various accounts in Singapore, New York, New Jersey, and Hong Kong for “purported investments” by Li and her company. First Amended Complaint (“FAC”) ¶ 11. By June 7, 2024, Li ceased contact with Dr. Lee, and the accounts to which Dr. Lee wired funds were closed. In the second pig butchering romance scam, between August 2024 and April 2, 2025, Dr. Lee was defrauded by a person using the name “Ying Chen”, who also contacted him unsolicited on Facebook and convinced him to wire another approximately $4 million to various accounts for “purported investments.”

Plaintiffs allege that Dr. Lee was initially scammed while he was a customer of Chase Bank, not HSBC. At some point, however, Chase Bank refused to permit Dr. Lee to make additional wire transfers. As a result, on or about July 17, 2023, Dr. Lee opened a premier checking account at HSBC. Because HSBC had no branches in Arizona where Dr. Lee lived, Dr. Lee drove to HSBC’s Arcadia, California branch, where he opened the account in person. During the next two years, Dr. Lee “would drive from his home in Arizona to the HSBC branch in Arcadia, California”, where he, with the assistance of HSBC employees, “would fill out the paperwork to accomplish the wire transfers” even after the police and Department of Justice advised him that the person he was sending money to did not exist. FAC ¶ 15.

Plaintiffs allege that on December 22, 2024, Timothy, Dr. Lee’s son, called HSBC customer service “to alert them to the fact that his father was being defrauded,” and that Timothy’s sister, Tammy, went to the HSBC Arcadia branch on December 27, 2024 and informed employees that Dr. Lee was the victim of a scam. FAC ¶ 17. Plaintiffs allege that Mark C. Chen, the account manager assigned to Dr. Lee’s account, “agreed with Tammy’s assessment.” *Id.* As a result, Plaintiffs allege that, on December 30, 2024, HSBC temporarily froze Dr. Lee’s account. However, just a few days later, on or about January 2, 2025, HSBC removed the freeze, and thereafter Dr. Lee wired an additional $2.2 million to various accounts in Indonesia and Tanzania owned or controlled by the fictional Ying. According to Plaintiffs, on February 10, 2025, HSBC even permitted or encouraged Dr. Lee to open a separate savings account at HSBC, from which Dr. Lee wired more than $2 million to the accounts controlled by the fictional Ying.

Plaintiffs also allege that “HSBC held itself out to its customers, including [Dr.] Lee, as having specialized expertise and knowledge in detecting and preventing their customers from falling victim to financial fraud in general and romance scams in particular.” FAC ¶ 14. As an example, Plaintiffs cite to an online video, but there are no allegations that Dr. Lee actually saw or relied on that video.[1]

---

[1]HSBC requests that the Court take judicial notice of a printout of HSBC’s YouTube page, which shows that the relevant video was not posted until February 14, 2025, well after Dr. Lee opened his accounts at HSBC and began wiring funds. *See* HSBC’s Request for Judicial Notice (“RJN”), Ex. 2. HSBC also requests that the Court take judicial notice of the Rules for Consumer Deposit Accounts, effective November 20, 2020, which governs the parties’ contract as alleged in the First Amended Complaint. *See* RJN, Ex 1. The Court need not rule on HSBC’s Request for Judicial Notice because neither the YouTube page nor Rules for Consumer Deposit Accounts were relied on by the Court in ruling on this motion.

In their First Amended Complaint filed on March 10, 2026, Plaintiffs allege the following claims for relief against HSBC: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) breach of fiduciary duty; (4) fraud; (5) negligent misrepresentation; (6) aiding and abetting fraud and conversion; (7) violation of California Penal Code § 496; and (8) financial elder abuse in violation of Arizona Revised Statutes § 46-471.[2] The gravamen of each of Plaintiffs' causes of actions is that HSBC should not have accepted and processed the wire transfers authorized by Dr. Lee.

HSBC moves to dismiss Plaintiffs' First Amended Complaint on various grounds.

## II. LEGAL STANDARD

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. "A Rule 12(b)(6) dismissal is proper only where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.*, 922 F. Supp. 299, 304 (C.D. Cal. 1996) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)). However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

In addition, Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The heightened pleading requirements of Rule 9(b) are designed "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993). In order to provide this required notice, "the complaint must specify such facts as the times, dates, places, and benefits received, and other details of the alleged fraudulent activity." *Id*. at 672.

In deciding a motion to dismiss, a court must accept as true the allegations of the complaint and must construe those allegations in the light most favorable to the nonmoving party. *See, e.g., Wyler Summit Partnership v. Turner Broadcasting System, Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations." *Summit Technology*, 922 F. Supp. at 304 (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981)).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a

---

[2]In their Opposition, Plaintiffs claim that they inadvertently referred to A.R.S. § 46-471, but rather intended to refer to A.R.S. § 46-456(A). Opposition (Docket No. 35) at 26.

Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) (citations omitted). However, a court may consider material which is properly submitted as part of the complaint and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201 without converting the motion to dismiss into a motion for summary judgment. *See, e.g., id.*; *Branch v. Tunnel*, 14 F.3d 449, 454 (9th Cir. 1994).

Where a motion to dismiss is granted, a district court must decide whether to grant leave to amend. Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g., DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). However, a Court does not need to grant leave to amend in cases where the Court determines that permitting a plaintiff to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

## III. DISCUSSION

### A. Division 11 of the California Uniform Commercial Code Displaces Plaintiffs' Common Law Claims.

HSBC argues that Division 11 of the California Uniform Commercial Code ("California UCC") displaces all of Plaintiffs' claims.[3] The Court agrees that Division 11 displaces all of Plaintiffs' common law claims, but declines to find that Division 11 displaces Plaintiffs' statutory claims.

#### 1. California Uniform Commerical Code and Displacement

The California UCC "does not automatically displace all other legal principles." *Zengen, Inc. v. Comerica Bank*, 41 Cal. 4th 239, 251 (2007). Section 1103 of the California UCC provides:

> *Unless displaced by the particular provisions of this code*, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, and other validating or invalidating cause supplement its provisions.

Cal. Com. Code § 1103(b) (emphasis added). In other words, "other principles of law will apply here unless some particular provisions of the California Uniform Commercial Code have displaced them." *Zengen*, 41 Cal. 4th at 251.

Division 11 regulates, and provides detailed rules and procedures, concerning "funds transfers." *See Zengen, Inc. v. Comerica Bank*, 41 Cal. 4th 239, 244 (2007). A "funds transfer" is defined in relevant part as "the series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order." Cal. Com. Code §

---

[3]Division 11 of the California Commercial Code is identical to article 4A of the Uniform Commercial Code. *Zengen, Inc. v. Comerica Bank*, 41 Cal. 4th 239, 243 n.1 (2007)

11104(a). A "payment order," in turn, "means an instruction of a sender to a receiving bank, transmitted orally or in a record, to pay, or to cause another bank to pay, a fixed or determinable amount of money to a beneficiary . . . ." Cal. Com. Code § 11103(a)(1).[4] Division 11 defines when a payment order is considered "authorized": "A payment order received by the receiving bank is the authorized order of the person identified as sender if that person authorized the order or is otherwise bound by it under the law of agency." Cal. Com. Code § 11202(a). Section 11204 of Division 11 specifies when a bank must refund unauthorized payment orders:

> If a receiving bank accepts a payment order issued in the name of its customer as sender which is (i) not authorized and not effective as the order of the customer under Section 11202, or (ii) not enforceable, in whole or in part, against the customer under Section 11203, the bank shall refund any payment of the payment order received from the customer to the extent the bank is not entitled to enforce payment . . . .

Cal. Com. Code § 11204(a). Importantly, Division 11 limits the liability of a receiving bank for accepting payment orders -- whether authorized or unauthorized -- to that provided in the California UCC. *See* Cal. Com. Code § 11212 ("Liability based on acceptance arises only when acceptance occurs as stated in Section 11209, and liability is limited to that provided in this division."). In short:

> [S]ections 11201 through 11204 [of Division 11] provide a detailed scheme for analyzing the rights, duties and liabilities of banks and their customers in connection with the authorization and verification of payment orders. Analysis of a funds transfer under these sections results in a determination of whether or not the funds transfer was "authorized," and provides a very specific scheme for allocation of loss.

*Zengen*, 41 Cal.4th at 251-52 (cleaned up); *Liu v. Bank of America*, N.A. 804 F.Supp.3d 1037, 1048 (2025).

In light of the detailed statutory scheme in Division 11, the California Supreme Court in *Zengen, Inc. v. Comerica Bank* held that Division 11 displaces or "preempts" common law causes of action involving funds transfers in two circumstances:

> (1) where the common law claims would create rights, duties, or liabilities inconsistent with division 11; and (2) where the circumstances giving rise to the common law claims are specifically covered by the provisions of division 11.

*Zengen*, 41 Cal. 4th at 253 (quotation omitted). In reaching this conclusion, the California Supreme Court heavily relied on the Uniform Commercial Code Comment to section 4A-102, adopted in California as California UCC § 11102, which provides:

---

[4] In this case, Plaintiffs do not dispute that the wire transfers at issue were "funds transfers" under Division 11. Dr. Lee was the originator or sender of the payment order, HSBC was the receiving bank, and Jessica Li and Ying Chen were the beneficiaries.

> In the drafting of Article 4A [i.e., division 11], a deliberate decision was made to write on a clean slate and to treat a funds transfer as a unique method of payment to be governed by unique rules that address the particular issues raised by this method of payment. A deliberate decision was also made to use precise and detailed rules to assign responsibility, define behavioral norms, allocate risks and establish limits on liability, rather than to rely on broadly stated, flexible principles. In the drafting of these rules, a critical consideration was that the various parties to funds transfers need to be able to predict risk with certainty, to insure against risk, to adjust operational and security procedures, and to price funds transfer services appropriately. This consideration is particularly important given the very large amounts of money that are involved in funds transfers.
>
> Funds transfers involve competing interests—those of the banks that provide funds transfer services and the commercial and financial organizations that use the services, as well as the public interest. These competing interests were represented in the drafting process and they were thoroughly considered. The rules that emerged represent a careful and delicate balancing of those interests and are intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article. *Consequently, resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article*.

*Zengen*, 41 Cal. 4th at 252 (quoting Cal. Com. Code foll. § 11102) (emphasis in original).

Ultimately, in *Zengen,* the California Supreme Court held that the plaintiff's common law causes of action for breach of contract, negligence, return of deposit, and money had and received were all displaced by Division 11. *Id.* at 251-55. In *Zengen*, the plaintiff's chief financial officer had forged signatures on payment orders in the amount of $4.6 million to transfer funds from the plaintiff company's account to a bank account that he solely controlled. *Id.* at 245. Despite the fact that the plaintiff alleged circumstances that should have alerted the bank to the fraud, the Supreme Court reasoned: "The gravamen of each of Zengen's causes of action against the Bank . . . is the same: The Bank should not have accepted and executed the fraudulent payment orders." *Id.* at 254. "[B]ecause the situation made the basis of the plaintiff's common-law claims -- that the Bank made an improper funds transfer -- is unequivocally addressed in the particular provisions of Article 4A. we conclude that those common-law claims are displaced by Article 4A and that the plaintiff's exclusive remedy for that claim must be found in Article 4A." *Id.* at 254-55 (cleaned up).

### 2. Division 11 Displaces Plaintiffs' Common Law Claims

Similarly, in this case, the Court concludes that Division 11 displaces all of Plaintiffs' common law claims. The gravamen of each of Plaintiffs' claims is that HSBC should not have accepted and executed Dr. Lee's authorized payment orders. However, Division 11 unequivocally addresses who should bear the loss under these circumstances. Indeed, Division 11 expressly limits a bank's liability for accepting payment orders -- whether authorized or unauthorized -- to that provided in the California UCC. Cal. Com. Code § 11212; *BPi Bright Power, Inc. v. Umpqua Holding Corp.*, 669 F. Supp. 3d 904, 906 (N.D. Cal. 2023) ("Division 11 specifically addresses when a receiving bank may be liable for accepting a payment order."). And, where the funds

transfers were authorized by the bank's customer, as in this case, there is no liability for the bank's acceptance of a payment order under the California UCC. *See* Cal. Com. Code § 11104, 11212; *see also Liu v. Bank of America, N.A.*, 804 F. Supp. 3d 1037, 1043 (N.D. Cal. 2025) (holding that Division 11 does not require the bank to reject the account holder's authorized request to move his own money between his own accounts or require the bank to refund such authorized transfers); *cf. Harborview Cap. Partners, LLC v. Cross River Bank*, 600 F. Supp. 3d 485, 491 95 (D. N.J. 2022) (concluding that plaintiffs had no claim against the bank under the UCC where victim had authorized the transfers, even though victim was tricked by third party into authorizing the transfers); *Gilbert v. Wells Fargo Bank, N.A.*, 698 F. Supp. 3d 844, 847 (D.S.C. 2023) ("A bank will not be liable for loss when a payment order is [ ] authorized by the sender . . . .").

In *Liu v. Bank of America*, 804 F. Supp.3d 1037 (N.D. Cal. 2025), the District Court for the Northern District of California addressed a strikingly similar case and dismissed the plaintiffs' claims as displaced by Division 11. *Liu*, 804 F. Supp. 3d 16 1043. There, as here, the complaint alleged that the account holder authorized the transfers but attempted to place liability on the bank for ignoring signs that the accountholder was being scammed. *Id*. Canvassing the law on the point, the *Liu* district court reasoned that, even though the account holder might be left with no remedy, the California Legislature allocated the risk of loss for an authorized wire transfer to the account holder, not the bank. *Id*.

Plaintiffs contend that their claims are not displaced by Division 11, arguing that HSBC's misrepresentations regarding its specialized expertise to detect and prevent romance scams, as well as HSBC's affirmative conduct in freezing and unfreezing Dr. Lee's account, opening a new savings account, and sending approximately $2.2 in wire transfers with actual knowledge of ongoing fraud, fall outside Article 4A's scope. Although the California UCC does not "necessarily displace[ ] all common law actions based on activities surrounding funds transfers," it displaces those "situations covered by particular provisions" of Division 11. *Zengen*, 41 Cal.4th at 251. And, Division 11 expressly covers and limits the liability of a bank based on the acceptance of a payment order. *See* Cal. Com. Code § 11212. In this case, each of plaintiffs' claims and alleged damages all turn on the fact that HSBC "accepted" (i.e, executed) Dr. Lee's payment orders, a situation covered by Division 11. Specifically, in Plaintiffs' breach of contract and breach of the covenant of good faith and fair dealing claims, Plaintiffs allege that HSBC breached an implied covenant (and the covenant of good faith and fair dealing) by failing to utilize its specialized expertise, knowledge and technology to detect and prevent the pig butchering romance fraud scams and thus claim that HSBC is jointly and severally liable for all funds stolen from Dr. Lee in the approximate sum of $8 million (i.e., the amount of the payment orders accepted by HSBC). FAC ¶¶ 19-28. In Plaintiffs' claim for breach of fiduciary duty, Plaintiffs allege that Dr. Lee was induced to become a customer of HSBC in reliance on HSBC holding itself out as having specialized expertise, knowledge, and technology for detecting and protecting their customers from falling victim to financial fraud, and that HSBC breached a fiduciary duty by failing to detect and prevent Dr. Lee from becoming a victim of the pig butchering romance scams. FAC ¶¶ 30-31. Plaintiffs thus claim that HSBC is jointly and severally liable to plaintiffs for all funds stolen from Dr. Lee (i.e., the amount of the payment orders accepted by HSBC). FAC ¶ 32. In both the fraud and negligent misrepresentation claims, Plaintiffs allege that HSBC misrepresented that it had specialized expertise, knowledge, and technology for detecting and preventing its customers from falling victim to romance fraud scams, and that HSBC is jointly and severally liable to plaintiffs for all funds stolen from Dr. Lee (i.e. the amount of the payment orders accepted by HSBC). FAC ¶¶

34-44. In Plaintiffs' aiding and abetting fraud and conversion claim, Plaintiffs allege that, despite knowing that Dr. Lee was the victim of the fraud schemes, HSBC gave substantial aid and assistance to the scammers by wiring funds from Dr. Lee's accounts at HSBC to the scammers, and thus that HSBC is jointly and severally liable in the amount of those wired funds (i.e., the amount of payment orders accepted by HSBC). FAC ¶ 45-47. Notably, for each of these claims, Plaintiffs' damages are based on the fact that HSBC accepted and executed the authorized but fraudulent payment orders.

Because the gravamen of each of Plaintiffs' common law claims is that HSBC should not have accepted and executed Dr. Lee's payment orders, Division 11 displaces those claims. *See Liu*, 804 F. Supp. 3d at 1043 ("[E]ven assuming that Plaintiffs have alleged some misconduct that arguably occurred before the wire transfers, Plaintiffs' alleged damages all turn on the fact that Defendant processed the transfers."). If the Court were to hold otherwise, it would eviscerate the policy choice made by the California Legislature in enacting Division 11 regarding the allocation of risk for funds transfers and the need to predict risk with certainty. Accordingly, HSBC's motion to dismiss Plaintiffs' common law claims for (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) breach of fiduciary duty; (4) fraud; (5) negligent misrepresentation; and (6) aiding and abetting fraud and conversion is granted.

3. Division 11 Does Not Necessarily Displace Plaintiffs' Statutory Claims.

Without any meaningful analysis, HSBC contends that Plaintiffs' statutory claims for violation of California Penal Code § 496 and financial elder abuse in violation of Arizona Revised Statutes 46-471 (or 46-456(A)) are also displaced by Division 11 of the California UCC. The California Supreme Court's holding in *Zengen* was limited to common law claims, and it is far from settled whether Division 11 displaces Plaintiffs' statutory claims as well. In *Liu*, the district court for the Northern District of California held that the California Supreme Court's reasoning in *Zengen* "would seem to apply equally to common law and statutory claims." *Liu v. Bank of America, N.A.,* 804 F. Supp.3d 1037, 1044 (N.D. Cal. 2025). However, the district court ruled without the benefit of full and complete briefing by the parties. *See id.* at 1044 n.5 (noting that plaintiffs and defendant only address this argument in passing). Similarly, here, Plaintiffs and HSBC fail to adequately address this issue.

The Court notes that the Uniform Commercial Code Comment to section 1-103, adopted in California as California UCC § 1103,[5] suggests that displacement of statutes requires a different analysis, than the analysis in *Zengen*:

> **Application of subsection (b) to statutes.** The primary focus of Section 1-103 is on the relationship between the Uniform Commercial Code and principles of common law and equity as developed by the courts. State law, however, increasingly is statutory. Not only are there a growing number of state statutes addressing specific issues that come within the scope of the Uniform Commercial Code, but in some

[5] As discussed *supra*, California UCC § 1103 provides that other principles of law and equity supplement the California UCC unless particular provisions of the California UCC have displaced them.

> States many general principles of common law and equity have been codified. When the other law relating to a matter within the scope of the Uniform Commercial Code is a statute, the principles of subsection (b) remain relevant to the court's analysis of the relationship between that statute and the Uniform Commercial Code, but other principles of statutory interpretation that specifically address the interrelationship between statutes will be relevant as well. In some situations, the principles of subsection (b) still will be determinative. For example, the mere fact that an equitable principle is stated in statutory form rather than in judicial decisions should not change the court's analysis of whether the principle can be used to supplement the Uniform Commercial Code-under subsection (b), equitable principles may supplement provisions of the Uniform Commercial Code only if they are consistent with the purposes and policies of the Uniform Commercial Code as well as its text. In other situations, however, other interpretive principles addressing the interrelationship between statutes may lead the court to conclude that the other statute is controlling, even though it conflicts with the Uniform Commercial Code. This, for example, would be the result in a situation where the other statute was specifically intended to provide additional protection to a class of individuals engaging in transactions covered by the Uniform Commercial Code.

Cal. Com. Code foll. § 1103, U.C.C. § 1-103 cmt. 3.

Relying solely on *Liu*, HSBC fails to meaningfully address whether the particular statutes at issue in this case are displaced by Division 11. Accordingly, the Court declines to conclude that Plaintiffs' statutory claims are displaced by Division 11 on this record.

### B. Plaintiffs Fail to State a Claim for Violation of California Penal Code § 496 .

In any event, the Court concludes that Plaintiffs have failed to plead sufficient facts to state a plausible claim for violation of California Penal Code § 496. Cal. Penal Code § 496(a) defines the criminal offense of what is commonly referred to as receiving stolen property. It provides, in relevant part:

> Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft . . ., knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a county jail for not more than one year, or imprisonment pursuant to subdivision (h) of Section 1170.

Cal. Penal Code 496(a). Section 496(c) provides for special remedies for a violation of section 496(a): "Any person who has been injured by a violation of subdivision(a) . . . may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorneys's fees."

In order to state a claim for violation of California Penal Code § 496, Plaintiffs must allege: (1) the property was stolen, (2) the defendant knew the property was stolen, and (3) the defendant received or had possession of the stolen property (or as Plaintiffs claim here, aided in concealing

or withholding the stolen property from its owner). *See Switzer v. Wood*, 35 Cal. App. 5th 116, 126 (2019); Judicial Council of Cal. Crim. Jury Instructions, CALCRIM No. 1750, Receiving Stolen Property. A necessary element of receipt of stolen property is the defendant's actual knowledge at the time of receipt (or at the time the defendant aided in concealing or withholding the property) that the property was stolen. *See People v. Tessman*, 223 Cal. App. 4th 1293, 1302 (2014).

In this case, the funds in Dr. Lee's bank accounts (i.e. the property at issue) were not stolen until after HSBC executed the wire transfers and the funds were transferred out of Dr. Lee's accounts and were no longer in HSBC's custody. As such, Plaintiffs do not and cannot state a claim for violation of California Penal Code § 496. Accordingly, HSBC's motion to dismiss this claim is granted.

### C. Plaintiffs Fail to State a Claim for Financial Elder Abuse in Violation of Arizona Revised Statutes § 46-471 (or § 46-456(A)).

Plaintiffs acknowledge that their elder abuse claim for violation of Arizona Revised Statutes § 46-471 fails. *See* Opp. at 26, n.2 (noting that the First Amended Complaint inadvertently referred to A.R.S. § 46-471).

Plaintiffs' new statutory claim raised for the first time in their Opposition also fails. Arizona Revised Statutes § 46-456(A) applies to a person who is in a "position of trust and confidence" to a "vulnerable adult" (defined as an individual unable to protect themselves from exploitation due to physical or mental impairment). A.R.S. §§ 46-451, 46-456. The statute defines a "position of trust and confidence" as only including certain fiduciary and confidential relationships, including, for example, "a person who has assumed a duty to provide care to the vulnerable adult," "a person who is in a fiduciary relationship with a vulnerable adult including a de facto guardian or de facto conservator," or "a person who is in a confidential relationship with the vulnerable adult." A.R.S. § 46-451(J).

Plaintiffs fail to plausibly allege that HSBC was in a "position of trust and confidence" as defined by the statute. Indeed, it is well settled under Arizona law "that the relationship between a Bank and an ordinary depositor, absent any special agreement, is that of debtor and creditor." *Valley Nat. Bank of Phoenix v. Electrical Dist. No. 4*, 90 Ariz. 306, 316 (1961). And, not surprisingly, Plaintiffs fail to cite any case applying Arizona's financial elder abuse statute to a banking relationship.[6]

Accordingly, HSBC's motion to dismiss this claim is granted.

---

[6]Notably, the statute expressly excludes from its scope "an agent who is acting within the scope of the person's duties as, or on behalf of . . . a bank, financial institution or escrow agent licensed or certified pursuant to title 6." A.R.S. § 46-456(H). Plaintiffs argue that, because HSBC is not "licensed or certified pursuant to title 6," the statute could conceivably apply to HSBC. Notably, HSBC has no branches in Arizona, and thus it is hardly surprising that it is not licensed or certified pursuant to title 6. In any event, Plaintiffs fail to plausibly allege that HSBC is in a statutorily defined position of trust and confidence.

## IV. CONCLUSION

For the foregoing reasons, HSBC's Motion to Dismiss Plaintiffs' First Amended Complaint is **GRANTED**.

Although the Court recognizes that this Circuit has a liberal policy favoring amendments and that leave to amend should be freely granted, the Court is not required to grant leave to amend if the Court determines that permitting a plaintiff to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile."). With respect to each of the claims alleged in the First Amended Complaint, the Court concludes that amendment would be futile, and thus denies Plaintiffs' request for leave to amend those claims. However, Plaintiffs also request leave to amend to file a Second Amended Complaint in order to assert additional statutory claims under California Business & Professions Code § 17500, *et seq.* and California Civil Code § 1750. Although it very well may be an exercise in futility, in light of the Ninth Circuit's liberal policy favoring amendments, the Court grants Plaintiffs' request for leave to file a Second Amended Complaint, solely to allege these two statutory claims for relief. Plaintiffs shall file their Second Amended Complaint on or before **May 26, 2026.** Failure to file a Second Amended Complaint on or before May 26, 2026 will result in the dismissal of this action with prejudice.

IT IS SO ORDERED.